**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(Filed Electronically)**

**CRIMINAL ACTION NO. 3:22CR-95-RGJ
UNITED STATES OF AMERICA,**                                         **PLAINTIFF,**

**vs.**

**MARION TARTER,**                                                                 **DEFENDANT.**

**DEFENDANT'S POST-HEARING
SUPPRESSION MEMORANDUM**

Comes the defendant, Marion Tarter, by counsel, and hereby files the following memorandum in support of the defendant's motion to suppress evidence obtained from the defendant's person during the illegal search and seizure on December 14, 2021.

**Factual Background**

On December 14, 2021, Officer Jesse Bratcher of the Mt. Washington police department made a traffic stop involving Mr. Tarter. Tarter was pulled over because the vehicle he was driving did not have a valid license plate. DN 20, *Transcript of Suppression Hearing*, page ID 64,65. *Hereinafter, "Transcript"*. Upon Officer Bratcher activating his lights, Mr. Tarter, who was alone in the car, stopped the vehicle, rolled down his window to speak with the officer, produced his driver's license, and responded appropriately to the officer's questions. *Transcript*, page ID 71,72.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

Officer Bratcher claimed that Tarter was "acting nervous", which he described as Tarter being ". . . real short, wouldn't speak up, didn't want to make eye contact and just continual movements." *Transcript,* page ID 67. The officer claimed that "prior to approaching the vehicle" these movements appeared to be within the area of his waistband. *Transcript*, page ID 66. He did not explain how he observed this prior to his approach of the vehicle from behind, and of course, nothing was preserved by body cameras or dashboard cameras. *Transcript,* page ID 71. The officer was further perturbed as Mr. Tarter did not want to put his cell phone down, which was connected to a cord that ran toward the waistband of Mr. Tarter's pants. *Transcript*, page ID 67.

At that point, Officer Bratcher decided that he would order Tarter out of the vehicle. He testified that this was due to his suspicion that Mr. Tarter "was either concealing some illegal contraband or possibly a weapon inside his waistband." *Transcript,* page ID 67. In order for him to call other officers to further investigate whether Tarter had drugs or a firearm, and wait for their arrival, Bratcher returned to his vehicle, while Tarter remained in his car as well. *Transcript,* page ID 74. While waiting in his police cruiser for backup, Officer Bratcher ran Mr. Tarter's driver's license, but did nothing to further the investigation into the car registration, claiming that he was unable to view the VIN number on the Blazer with Tarter seated in the car. *Transcript*, page ID 74, 80-81.

Two other officers arrived. Officer Aubin went to the driver's side door and "assisted" Mr. Tarter in exiting the car (grabbed him by the arm). *Transcript*, page ID 68. Upon getting Mr. Tarter out of the car, officers allege that Tarter was making movements toward his waist.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

Officer Aubin believed that these movements were "an attempt to conceal items". DN 16-1, *Affidavit for Search Warrant*, page ID 38. Therefore, Mr. Tarter was handcuffed behind his back. *Transcript,* page ID 68; see also; DN 16-1*, Affidavit for Search Warrant*, page ID 38.

Once placed in handcuffs, Officer Aubin patted down Mr. Tarter. Aubin claimed that as a result of this pat down ***for weapons***, a ***string*** was located which ran from the outside of his pants to the inside of his pants. DN 16-1, *Affidavit for Search Warrant*, page ID 38. Upon locating the string, it was pulled out, ostensibly to see if a weapon was attached to the other end. Attached to the string, allegedly located in the defendant's pants, was a bag containing 10 grams of methamphetamine and a bag of pills. Aubin, in his affidavit supporting the search warrant, made no mention that he noticed any bulge in the defendant's pants, other than the string or cord, either prior to or during the pat down..

Officer Bratcher, on the other hand, testified that as a result of the pat down, although there was no bulge noticed beforehand, Officer Aubin noticed a lump in the crotch area. *Transcript*, page ID 69. As Bratcher did not see the bulge, and was not doing the pat down, he could only say that Aubin described it as an "unusual bulge". *Transcript*, page ID 76. It is uncertain whether this was the 10 grams of meth, and an unknown amount of pills, or the cord running underneath Mr. Tarter's pants. Bratcher could not recall the size of the baggies of meth and pills or if this was documented with any photos. *Transcript*, page ID 78-79. There was no claim made in the testimony that the unusual bulge was in any way suggestive of a gun or weapon. As noted, there was not any mention of an unusual bulge in the Affidavit in Support of the Search Warramt/ Although Bratcher conceded that he had never encountered

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

anything attached to a string or cord such as involved in this case, the cord was nevertheless removed from inside of the defendant's pants, and the bags with a tiny amount of methamphetamine and unknown number of pills were seized.

Mr. Tarter testified as well. While the Mt. Washington police department has apparently made a conscious decision not to record encounters with citizens, Mr Tarter was attempting to record the incident with his phone. *Transcript,* page ID 88. The police aggressively prevented this, while immediately handcuffing him. Tarter denied reaching into his pants, resisting in any way, attempting to flee, nor making any threats to the police. *Transcript*, page ID 91. Efforts to record this encounter by the defendant were physically prevented by the police, and apparently the police had no interest in recording the encounter themselves.

The illegal seizure, and subsequent search of Mr. Tarter resulted in the police seizing 10 grams of methamphetamine and some pills, which are the subject of the above styled indictment.

**The Seizure and Search of Mr. Tarter Was Illegal**

Under the Fourth Amendment, warrantless searches "are per se unreasonable" subject only to a few specifically established and well-delineated exceptions." *Katz v United States*, 389 U.S. 347 (1967). There seems to be no dispute that the search and seizure in this case was without a warrant.

As the filing of briefs is simultaneous, there is a degree of speculation as to the particular exception the government feels is applicable. Certainly, under the facts of this case,

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

the police had no probable cause to believe Mr. Tarter was committing a crime which necessitated a search under his clothing.

The government may allege that this stop was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968). A *Terry* stop, while allowing for a limited stop of an individual with less than probable cause, still requires a reasonable, individualized suspicion based on articulable facts. The facts of this case fall well short of that.

Terry held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993), *citing Terry, supra*, at 24. "The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence..." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

Therefore, regardless of the suspicion that a person is committing a crime, an officer conducting a patdown of a driver during a traffic stop, just as in the case of a pedestrian as in Terry, must still have reasonable suspicion that the person subjected to the frisk is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323 (2009). In addition, this protective search "must be ***strictly 'limited*** to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby'". *Dickerson, supra*, at 373, citing *Terry. (Emphasis added)*.

"If the protective search goes beyond what is necessary to determine if the suspect is

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson supra*, *citing Sibron v. New York*, 392 U.S. 40, 65-66 (1968).

In this case, officers ordered Mr. Tarter out of the car upon observing what they claimed was "very nervous" behavior. After they claim he continued to make movements which were indicative of attempting to conceal "items", Tarter was handcuffed behind his back, and a patdown was conducted. See, DN 16-1, *Affidavit by Officer Aubin*, page ID 38. It was only then that the string/cord was located in the area under his pants.

Putting aside the very real concerns regarding the credibility of the officers in this case, the version of events put forward by the officers falls far short of what is necessary to seize the nonthreatening contraband found in this case. Aubin, the officer conducting the patdown, stated "The subject was placed in handcuffs and officers located a string running from the outside of his pants to the inside of his pants. ***This was located during a pat down for weapons***." DN 16-1, Aubin affidavit, page ID 38 (emphasis added). Bratcher, who conceded he never saw a bulge, stated that the cord/string (and the 10 grams of pill and pills) was removed after Aubin felt a bulge. When asked by defense counsel to describe the nature of the "bulge" described by Aubin, Bratcher could only say "Just an abnormal– I wasn't the one doing the pat down so I couldn't tell what he felt, but what he described to me is an unusual bulge." *Transcript*, page ID 76.

Logically evaluating the testimony of Bratcher, in combination with Aubin's affidavit, the unusual bulge was the cord found to be running under Tarter's pants. The string/cord was

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

supposedly removed to determine if a weapon was attached to the other end. Bratcher, of course, noted that he had never encountered anything attached to a cord. *Transcript,* page ID 76. Even if one speculates that the bulge felt by Aubin was the drugs, there was **no claim** that this felt like a gun or weapon. Even if such a claim were made, it would be dubious given the nature of what was discovered. It is difficult to imagine a universe where either a cord or 10 grams of meth and some pills feels like a firearm or dangerous weapon.[1] Additionally, it is not insignificant that Mr. Tarter was handcuffed behind his back while this frisk/patdown occurred.

*Dickerson* directly addresses the issue presented in this case. While police may seize nonthreatening contraband detected during a protective patdown search, it must be done withing the bounds marked by *Terry*. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Dickerson, supra*, at 375-376.

"Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have ***probable cause*** to believe that the item is contraband before seizing it ensures against excessively speculative seizures."

---

[1] While not scientific, and only for the sake of illustration or comparison, 10 grams of salt is just over 1 ½ teaspoons in size. See, www.calculateme.com.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

*Dickerson, supra*, at 376 (emphasis added). Thus, even if the officers in this case had reasonable suspicion to conduct the pat down search initially, the pat down did not yield any additional evidence that would support the probable cause needed to remove the contraband (drugs) found in the defendant's pants.

The above arguments apply when the police officers' version of events is taken at face value. However, Mr. Tarter's testimony that he did nothing to resist or impede the officers, and did not make furtive movements or threats should not be disregarded. The testimony of Officer Bratcher is not entirely consistent with the affidavit of the actual officer doing the search, Officer Aubin. The speculative investigation into drugs or illegal activity seems easily the primary motivation of the officers. Officer Bratcher, while supposedly believing Mr. Tarter was armed and dangerous, returned to his squad car for several minutes while Tarter remained in the Blazer, without supervision or physical restraint of any kind. Subjective descriptions of "nervousness" and movements "in the direction of the waist" are easily made and difficult to refute. The conscious decision of police departments to refuse to utilize technology (body cameras/ dash cameras) that has been available for decades should not be rewarded. One may argue that such recordings would often (and probably most often), support the version of police. A policy that ignores any attempt at such documentation relies on the dangerous assumption that it is the testimony of the police officer that will always win out. Fortunately, in Memphis, South Carolina, Georgia, and Minneapolis (among other places) this easy to use technology has proven that, on occasion, the police, like all people, will bend the truth for their own purposes.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

## Conclusion

The seizure and search of Mr. Tarter on December 14, 2021 was warrantless, not consensual, and not made with probable cause, or even reasonable suspicion to believe that Mr. Tarter had been, was, or was about to be engaged in criminal activity. Should the Court find that the police had reasonable suspicion to frisk/patdown Mr. Tarter, the protective search went far beyond the bounds of Terry, the search was illegal, and the fruits of the search should be suppressed. *Minnesota v. Dickerson*, 508 U.S. 366 (1993): *Sibron v. New York*, 392 U.S. 40 (1968). All fruits of the illegal stop must also be suppressed, which would include the subsequent search of the Blazer, while it was located in the police tow lot, on April 8, 2022. *Wong Sun v. United States*, 371 U.S. 471 (1963). Therefore the search was unconstitutional, and the defendant's motion to suppress the evidence obtained from it should be SUSTAINED.

/s/ Donald J. Meier
Assistant Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525
Counsel for Defendant.

## **CERTIFICATE**

I hereby certify that on January 31, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Hon. Josh Porter, Assistant United States Attorney.

/s/ Donald J. Meier

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808