UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                      Plaintiff

v.                                                                            Criminal Action No. 3:22-CR-95-RGJ

MARION TARTER                                                                                Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Marion Tarter ("Tarter") moves to suppress all evidence derived from a warrantless search of his person during a traffic stop and obtained from a search warrant issued for Tarter's vehicle. [DE 16]. The United States responded [DE 18]. The parties also filed supplemental briefing as permitted by the Court. [DE 22; DE 23]. This matter is ripe. For the reasons below, Tarter's Motion to Suppress [DE 16] is **DENIED**.

**I.    BACKGROUND**

On December 14, 2021, Officer Jesse Bratcher ("Bratcher") of the Mount Washington Police Department stopped Tarter for operating a vehicle without a license plate. [DE 16 at 31; DE 18 at 45; DE 22 at 102]. Tarter had a cord running into his pants. [DE 22 at 103; DE 23 at 113]. After Officer Bradley Aubin ("Aubin") and another backup officer arrived, the officers ordered Tarter out of his vehicle, then handcuffed and searched him without a warrant. [DE 16 at 31; DE 18 at 45]. During this search, the officers found methamphetamine on Tarter's person, and subsequently arrested and charged Tarter, and impounded his vehicle. [DE 16 at 31-32; DE 18 at 45-46].

On April 8, 2022, Aubin applied for a search warrant for Tarter's vehicle. [DE 16 at 32; DE 18 at 46; DE 18-2]. Aubin stated the following as probable cause:

1

> On 12/14/2021, Officers in the area conducted a traffic stop on a 2000 Chevrolet Blazer with no license plate in the area of Hartford Dr. and Concord Dr. The subject driving the vehicle was very nervous and officers asked him to step out of the vehicle. When the subject exited he continued to make overt movements in what I believed was an attempt to conceal items. The subject was placed in handcuffs and officers located a string running from the outside of his pants to the inside of his pants. This was located during a pat down for weapons. Officers pulled on the string to conform [sic] there were no weapons attached on the other end and located a large clear bag of what appears to be methamphetamine and another large bag of what was found to be gabapentin. All of these were on the other end of the string hanging between his legs.
>
> On 2-6-22, Officer received a copy of a jail recording from Officer Jesse Bratcher. The recording was of the individual arrested that night on 12/14/2021, Marion Tarter Jr. In this recording, the suspect is speaking with a friend and they are trying to find someone to get the listed vehicle out of the impound lot. He states the following, "they need, they need, they need, to get the vehicle out of impound. Have James check the engine." He further states that the person who gets it out, needs to focus on the engine compartment and get the battery out of the intake. The individual arrested that night has a history of trafficking methamphetamine and officer believes there are narcotics being stored inside the vehicle. Officer has learned through training and experience that narcotics are commonly transported inside of the engine compartment, "tramps" and concealed in other voids located inside the vehicle.

[DE 18-2 at 54]. Aubin described the personal property to be seized as

> Any narcotics to include suspected methamphetamine, suspected heroin or any other illegal narcotic substance. All cash to include paper money and coin any other item found in the vehicle related to case 21-007241 to support charges for KRS 218A. 1412 . . . Any and all cellular phone located with in the vehicle as well as any documents found to contain information regarding our case both written and electronic.

[*Id.* at 56]. The affidavit also describes the location of Tarter's vehicle as the "Mt. Washington Police Department Tow Lot" which is "[a] fenced in secured gravel parking lot where vehicles impounded by Mt. Washington Police Department officer's [sic] are stored." [*Id.*]. Based on Aubin's affidavit, Bullitt County District Court Judge Jennifer Porter found probable cause for the search and issued a warrant. [DE 18-2]. Officers subsequently searched Tarter's car and found methamphetamine and other evidence. [DE 16 at 32; DE 18 at 46].

2

Tarter moves to suppress all physical and testimonial evidence obtained from the warrantless traffic stop search and the search of his vehicle, though he does not question the probable cause for the stop itself. [DE 16]. The Court held a hearing on January 20, 2023, during which Tarter and Officer Bratcher testified. [DE 20, Transcript of Suppression Hearing].

## II.     DISCUSSION

### 1.     Warrantless Search of Tarter

#### i.     Standard

"It is well settled that in seeking suppression of [physical] evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014), *as amended* (Oct. 21, 2014).

During an investigative or *Terry* stop, an "officer may conduct a 'reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. The question is whether the officer had a "reasonable suspicion that [the individual] may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citing *Terry*, 392 U.S. at 1). "Reasonable suspicion" is a "particularized and objective basis for suspecting wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In evaluating whether an officer had reasonable suspicion, courts look at

the "totality of the circumstances" and consider "all of the information available to law enforcement officials at the time." *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008) (internal quotation marks and citation omitted). Furthermore, even though a pat down is for officer safety, "an officer does not need to ignore contraband should any be discovered." *United States v. Pacheco*, 841 F.3d 384, 395 (6th Cir. 2016).

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. *Pearce*, 531 F.3d at 381 (citing *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). "This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* (citations omitted).

    ii.    *Analysis*

Tarter moves to suppress all evidence obtained from a search of his person after officers pulled him over for operating a vehicle without a license plate. [DE 16; DE 22]. While his initial briefing suggests argument that there was no probable cause for the initial stop [DE 16 at 33], Tarter's post-hearing briefing makes no specific argument that the officers' articulated reason—a "piece of cardboard in place of a registration plate"— was not probable cause to stop Tarter's vehicle. [DE 20 at 65; DE 22]. Similarly, the briefing questions the legitimacy of the search and not the length of the traffic stop. The Court thus does not further consider the probable cause for the initial stop or the time extension of the stop. Tarter also states he is "[p]utting aside the very real concerns regarding the credibility of the officers in this case." [DE 22 at 107]. The Court does not consider credibility issues either.

Tarter argues the warrantless search and seizure was illegal because police had no probable cause to search under his clothing, as they had no reasonable, individualized suspicion that he was

4

armed based on articulable facts. [DE 22 at 105-9]. The United States argues that officers had reasonable suspicion. [DE 23 at 113-15].

There is no dashcam or bodycam footage of the stop. The Court, therefore, considers the suppression hearing testimony of Officer Bratcher and Tarter. Bratcher testified Tarter was in a neighborhood that "at that time" of the morning, 2:00 a.m., "kind of gets our attention" and that Tarter "appeared to be extremely nervous making fervent movements like within his immediate area around his waistband." [*Id.* at 65–66]. The Supreme Court has recognized that a "high crime area" and "nervous, evasive behavior" are both pertinent factors in determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding stop reasonable when defendant fled upon seeing police in an area known for heavy narcotics trafficking); *see also Arvizu*, 534 U.S. at 275–76 (holding stop of vehicle reasonable based on factors including the driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer). Courts also hold general nervousness and a suspect's movements in and around his pockets as factors in the reasonable suspicion calculus. *See Pacheco*, 841 F.3d at 393 (while "nervous behavior, standing alone, is not enough to justify a Terry search, nervousness is still relevant to the reasonable suspicion calculus") (internal citation omitted); *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (finding officers justified in searching suspect where suspect's "insistent movements towards his right pocket" was one factor); *and Hemphill v. Haglund*, 45 F. App'x 519, 520 (6th Cir. 2002) ("the officer clearly had probable cause to conduct the search once he observed [defendant] appearing to stuff something into his pants"). Bratcher also testified that his experience is that the waistband is a place where he has found numerous dangerous objects or contraband. [DE 20 at 69]. *See Pacheco*, 841 F.3d at 396 (upholding admission of cocaine bricks

seized during *Terry* search because the seizure was based on the officer's training and experience about packaging, size, and feel of the object).

Bratcher also testified that Tarter's "cell phone was attached to like a charger cord . . . down his pants, like in his waistband [and] he kept moving around with that" and that Tarter "did not want to let go of his cell phone." [*Id.* at 66–67]. Bratcher testified that he "waited for backup to arrive and asked [Tarter] to exit the vehicle [because the officers] believed he was either concealing some illegal contraband or possibly a weapon within his waistband." [*Id.* at 67]. Bratcher noted that "the charger cord was down his pants and he just continued to reach for his waistband as he was out of the vehicle," which he described as a "bulge in his crotch area."[1] [*Id.* at 69-76]. Tarter argues that Bratcher's testimony establishes that "the unusual bulge was the cord found to be running under Tarter's pants" rather than the discovered meth and pills or a potential weapon. [DE 22 at 107]. Yet Tarter's own testimony was that the cell phone cord running into his pants was tied to his genitals. [DE 20 at 90]. While Tarter testified that "as a result of watching the pornography [on the tablet on his dashboard] [he] ha[d] an erection" and "the reason that the cord was tied to it was to keep it," this testimony and argument only explains the cord. The fact remains that this, presumably, would have appeared as a bulge in Tarter's pants. [*Id.* at 91]. This bulge in his pants, by itself, was likely enough to frisk him. *See United States v. Hardeman*, No. 19-20283, 2019 WL 5597141, at *1 (E.D. Mich. Oct. 30, 2019) ("Observing a bulge is sufficient to satisfy reasonable suspicion that [defendant] was armed"); *United States v. Stennis*, 457 F. App'x 494, 499 (6th Cir. 2012) ("The officer's perception of a bulge suspected to be a weapon provides reasonable suspicion that the individual may be armed and dangerous"). Moreover, the convergence of the above factors more than justifies "a reasonable and articulable suspicion that

---

[1] Bratcher also testified that Abuin described it as a "unusual bulge." [DE 20 at 76].

criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 263 (6th Cir. 1999).  The totality of the circumstances here, as analyzed above, justified the officers' pat-down of Tarter.  Thus, the evidence obtained as a result of the pat-down will not be suppressed.

    **2.    Validity of the Vehicle Search Warrant**

        *i.    Standard*

"It is well settled that in seeking suppression of [physical] evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)).  The defendant's burden extends to both "the burden of production and persuasion." *Patel*, 579 F. App'x at 453.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.  Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996) (quoting *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975)).  Suppression of a constitutionally defective search is inappropriate where the good-faith exception to the exclusionary rule applies.  *United States v. Leon*, 468 U.S. 897 (1984).

"The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only 'probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction.'" *Messerschmidt v. Millender*, 565 U.S. 535, 552 n.7 (2012) (alteration in original) (quoting *Warden, Md. Penitentiary*

*v. Hayden*, 387 U.S. 294, 307 (1967)).  An "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

When evaluating the merits of a motion to suppress, the responsibility of a reviewing court is simply to ensure that the warrant-issuing judge "had a 'substantial basis' for concluding that probable cause existed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)–39).  When reviewing that determination, this court should give "great deference" to the warrant issuing judge's determination of probable cause and "reverse that decision only if it was arbitrarily made." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009).  When determining whether probable cause existed for issuing a warrant, a reviewing court is to avoid an "excessively technical dissection of . . . isolated issues" and instead examine the "totality of the circumstances" contained with the warrant affidavit.  *Illinois v. Gates*, 462 U.S. 213, 234–35 (1983).

As determining probable cause for a warrant depends heavily on the existing conditions of the location to be searched, "there arises the 'unique problem of whether the probable cause which once existed has grown stale.'" *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citation omitted).  "[W]hether information contained in an affidavit is stale 'must be determined by the circumstances of each case.'" *Id.* (quoting *Sgro v. United States*, 287 U.S. 206, 210–11 (1932)).  When judging the circumstances of each case, "the length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id.*  Staleness depends instead on the "inherent nature of the crime." *Id.* (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)).  When reviewing the inherent nature of the crime, courts should examine several variables, including "the character of the crime (chance encounter in the night or

8

regenerating conspiracy?), the criminal (nomadic or entrenched), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Id.* (quoting *Andresen v. State*, 24 Md. App. 128 (1975), *aff'd,* 427 U.S. 463 (1976)). Finally, older information provided in a probable cause determination that may have grown stale may be "refreshed" if "recent information corroborates otherwise stale information." *Spikes*, 158 F.3d at 924.

### iii. Analysis

Tarter argues the affidavit fails to establish probable cause to search his vehicle because the jail call did not mention drugs and because the information in the warrant was stale as officers filed it four months after they arrested Tarter. [DE 16]. The United States disagrees. [DE 18].

The Court looks at the totality of the circumstances within the affidavit, deferring to the issuing magistrate's finding of probable cause. The affidavit included a short description of the traffic stop, the seizure of methamphetamine, and Tarter's history of trafficking methamphetamine. [DE 18-2 at 52]. The affidavit also described Tarter's jail call, in which he stated, "they need, to get the vehicle out of impound. Have James check the engine," and told the person to focus on the engine compartment and get the battery out. [*Id.*]. The Sixth Circuit has consistently held that a magistrate may infer a nexus between the place to be searched and the evidence sought, based on the nature of the evidence and the type of offense. *See, e.g.*, *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) ("an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence"); *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence"); *United States v. Randle*, No. 1:22-CR-663, 2023 WL 144850, at *5 (N.D. Ohio Jan. 10, 2023) (finding affidavit that incorporated jail call was

supported by probable cause). Based on this evidence, it was reasonable for the magistrate to infer that Tater would have methamphetamine or other evidence in his vehicle.

Tarter also argues that "[t]here is nothing included in the warrant which would shed light on the status of [Tarter's vehicle] between December 14, 2021 and April 8, 2022." [DE 16 at 32]. He contends that "[t]here is no indication of where the car was during that entire period of time or who had access to it," so the information in the warrant is stale and there is no probable cause for the search. [*Id.* at 32–35]. He also points to the fact that this was a drug crime, in which information goes stale quickly "because drugs are usually sold and consumed in a prompt fashion." [*Id.* (citing *United States v. Frechette*, 583 F3d at 378.]. However, the warrant does point to the location of the car in the "Mt. Washington Police Department Tow Lot" which is "[a] fenced in secured gravel parking lot where vehicles impounded by Mt. Washington Police Department officer's [sic] are stored." [DE 18-2 at 56]. Bratcher testified that officers towed Tarter's vehicle to the impound lot the night they arrested Tarter. [DE 20 at 78]. Bratcher also testified that after they arrest someone and tow their vehicle everything "remains in the vehicle and the doors are never opened by officers until a search warrant or whatever else happens." [*Id.* at 80]. There is no evidence here to the contrary.

Although four months passed from Tarter's arrest to the search of his vehicle, the character of the crime is hiding illegal narcotics in a particular place—the engine of his vehicle. *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003) ("Even if a significant period of time elapsed, it is possible the magistrate judge may infer that 'a search would uncover evidence of wrongdoing.'") (citing *Spikes*, 158 F.3d at 923); *and United States v. Mills*, 357 F. Supp. 3d 634, 650 (E.D. Mich. 2019) ("the nature of [the defendant's] crime cannot be described in terms of a "chance encounter in the night"). The narcotics were non-perishable within this time frame, and

10

the place to be searched was secure—in a police impound lot— so the information was less likely to be stale and drugs themselves were much less likely to be consumed, because of the secure location. Thus, three of the four factors weigh against a finding of staleness, and the final factor does not apply. *See United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) (discussing the four factors). Even if the information was somewhat stale, the jail call also discussed the location of the vehicle as "impound" and made clear that the receiver of the call needed to get the car out and "check the engine." [DE 18-2 at 52; *Spikes*, 158 F.3d at 924 (subsequent corroboration will "refresh" stale information). Therefore, under these circumstances, any purported delay in applying for a executing a search warrant does not render the affidavit stale or invalidate the search warrant here.

Because the Search Warrant was supported by probable cause, the Court need not determine whether the good-faith exception applies. But for the sake of completeness, the Court considers Tarter's allegation that the good-faith exception does not apply here. [DE 16 at 35].

While Tarter states that the good-faith exception does not apply here because "the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" he does not develop any further argument on the good-faith exception. [*Id.*]. The Supreme Court explained that a court should not exclude evidence when an officer's reliance on a warrant later found to lack probable cause was objectively reasonable. *Leon*, 468 U.S. at 922. *Leon* identified four situations in which an officer's reliance on a later invalidated search warrant *could not* be considered objectively reasonable: (1) when the warrant is issued based on an affidavit that the affiant knows contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable;

11

and (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Id.* at 922–23.

Here, there is neither evidence—nor does Tarter develop any argument—that any of the four *Leon* situations apply.[2] There is no evidence that the affidavit in the Search Warrant reflected information Aubin knew was false, that the issuing magistrate was serving as a rubber stamp, that the affidavit was objectively unreasonable, or that the Search Warrant was facially deficient. As a result, even if the Search Warrant were not supported by probable cause, the *Leon* good-faith exception would apply, and suppression of the Search Warrant would be inappropriate.

### III. CONCLUSION

Accordingly, for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

1) Tarter's Motion to Suppress [DE 16] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 2, 2023

Cc: Counsel of record

---

[2] *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Singleton v. Astrue*, No. CIV.A. 09-333-GFVT, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010), *report and recommendation adopted,* No. CIV. 09-333-GFVT, 2011 WL 843965 (E.D. Ky. Mar. 9, 2011) ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (6th Cir. 1994) (Table) (internal quotation marks and formatting omitted).